UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRENDA FAY VANASDALL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:14-CV-1597 JD ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Brenda Fay VanAsdall's complaint for review of the denial of her claim for disability benefits by the Commissioner of Social Security. For the following reasons, the Court reverses the decision of the Commissioner and remands this matter for further proceedings.

### I. FACTUAL BACKGROUND

Prior to applying for disability benefits, Ms. VanAsdall worked for about 25 years as a waitress. However, she alleges that as of June 6, 2009, she was no longer able to maintain employment due to a number of mental and physical health conditions, including depression, anxiety, degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease, coronary artery disease, and obesity. Ms. VanAsdall primarily cites severe back pain and depression as limiting her ability to work. She thus applied for disability insurance benefits, but her application was denied initially and again upon reconsideration. Ms. VanAsdall requested an administrative hearing before an administrative law judge, at which she and a vocational expert appeared and testified. Following the hearing, the ALJ issued a decision finding that Ms. VanAsdall was not disabled. While the ALJ agreed that each of the above conditions constituted

severe impairments, he found that Ms. VanAsdall's impairments did not meet or equal any listing at step three. He also found that Ms. VanAsdall was not able to perform her past relevant work, but that she would be able to perform a significant number of other jobs. In reaching those decisions, the ALJ found that Ms. VanAsdall was not fully credible, and he assigned little weight to the opinions of her treating pain specialist and her psychiatrist. The Appeals Council subsequently denied Ms. VanAsdall's request for review, so Ms. VanAsdall commenced this civil action, over which this Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). A court must affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence"

before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion ex rel Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### III. DISCUSSION

Ms. VanAsdall argues that the Commissioner erred in denying her claim for disability benefits. Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's Residual Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Here, Ms. VanAsdall's primary complaint with the ALJ's decision is that he mischaracterized and over-relied on her daily activities in finding that she was not disabled. Ms. VanAsdall contends that this error affected the ALJ's assessment of her credibility and also the weight that he gave to the opinions of her treating physicians. In turn, those matters affected the ALJ's listing analysis at step three, and impacted the RFC upon which the ALJ based his step-five finding. Ms. VanAsdall also argues that the ALJ inadequately articulated his consideration

of the pertinent factors in deciding what weight to give to her treating doctors' opinions, and that his discounting of those opinions was improper for that additional reason.

The Court agrees with Ms. VanAsdall that the ALJ did not adequately address her activities, and that this error warrants remand. The ALJ's decision repeatedly discusses Ms. VanAsdall's personal activities, but its description of those activities is decidedly one-sided, and it fails to acknowledge other evidence that puts those activities into context. For example, in recounting Ms. VanAsdall's testimony, the ALJ stated: "Despite her alleged impairments, the claimant testified that she has no significant difficulty performing personal care tasks. She also reported that she performs light cleaning around the house, including vacuuming, sweeping, cooking, dishes, and laundry. In addition, she indicated that she drives, goes grocery shopping, and attends church on a weekly basis." (R. 24). However, while Ms. VanAsdall indeed testified that she was able to perform various light household tasks, she also testified to significant limitations relative to those tasks. Specifically, she testified as to her back pain: "If I do small tasks, small tasks like sweeping or mopping or just basically housework that will set it off or, because I'm fine when I get up in the morning. It's just when I start getting mobile and start doing small tasks in the house I start, I will have to sit down and relax." (R. 52).

Ms. VanAsdall further testified during questioning by her attorney:

Q. So now you talked about doing some of this housework, this light housework. Are you doing that in between these times that you're --

A. Yes, I have to stop and rest between each job or stop in the middle of a job.

Q. And go and do what?

A. Sit down and relax.

(R. 68). The ALJ's decision never discusses those lines of Ms. VanAsdall's testimony, though, and never acknowledges any evidence of limitations in Ms. VanAsdall's ability to complete

5

those tasks. Likewise, the ALJ noted that Ms. VanAsdall was able to go grocery shopping. (R. 24). However, Ms. VanAsdall testified that when she goes to the store, she goes with her father because she can't lift the groceries on her own. (R. 68). Again, that testimony is absent from the ALJ's decision, as the ALJ only discussed the aspect of this evidence that supported his finding, which was improper. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (holding that the ALJ erred by failing to consider the manner in which the claimant performed the activities and the effect they had on him); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (finding that the claimant's minimal daily activities, which she performed with difficulty and with assistance, did not support the ALJ's conclusion that she did not suffer disabling pain);

In addition, the ALJ noted at least seven times in his decision that Ms. VanAsdall had "help[ed] her father clean and rehabilitate a rental property." (R. 22, 27, 30, 31). So far as is apparent from the ALJ's decision, the ALJ may have believed that Ms. VanAsdall was performing arduous construction work. Her testimony, however, painted a starkly different picture. She testified that on only a couple days, she helped her sister prime a wall and paint the bottom trim, but that it affected her very much and that she "suffered for it." (R. 71). She also testified that she had received an injection in her back right before doing that, and that she would not be able to do it over the course of a number of days or weeks. (*Id.*) Similarly, the treatment note the ALJ cited for this fact stated that Ms. VanAsdall "says this has caused her additional physical issues." (R. 631). Nonetheless, the ALJ did not acknowledge the pain that this activity caused or the fact that Ms. VanAsdall had just received a pain injection, both of which could have affected the extent to which these activities actually contradicted her complaints of severe pain. *Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir. 2015) (holding that an ALJ erred by discrediting a claimant for having helped remodel a house, where the ALJ did not acknowledge

6

that the claimant suffered severe pain as a result and was only able to do so because she had just received a pain injection).

The ALJ also noted that Ms. VanAsdall cared for her father and her nephew, a sixteen-year-old with cerebral palsy, both of whom she lived with. Though the ALJ appears to have placed particular emphasis on that fact, mentioning it multiple times in his decision, it is not apparent how that fact is inconsistent with Ms. VanAsdall's inability to maintain gainful employment. To the contrary, so far as the record reflects, Ms. VanAsdall's role in caring for her father and nephew appears quite limited. The only activities Ms. VanAsdall testified to relative to caring for her nephew were that she watches television with him and that she occasionally attends meetings at school, and the record does not appear to contain any details about what Ms. VanAsdall did to take care of her father. (R. 59–61). Furthermore, the Seventh Circuit has repeatedly "urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member." *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *see also Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005) (noting that the claimant took care of her children because she "*must* . . . , or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts"); *Jenkins v. Colvin*, No. 1:12-cv-1519, 2014 WL 900920, at 7 (S.D. Ind. Mar. 6, 2014). An individual might care for family members despite their genuine disability simply because they have no other choice, and they may be able to do so only through self-accommodations or flexibility that may not be available in the workplace. *Beardsley*, 758 F.3d at 838; *Gentle*, 430 F.3d at 867–68. Yet, the ALJ's decision did not explore or acknowledge any of those details or limitations in this evidence.

Likewise, the ALJ noted that for a year after her alleged onset of disability, Ms. VanAsdall received unemployment benefits and actively sought work. As the Commissioner argues, it is not inappropriate for an ALJ to consider such evidence in evaluating the credibility of a claimant's claim of disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). Again, however, the ALJ failed to consider other evidence that would put this evidence into context. Specifically, Ms. VanAsdall reported that unemployment benefits were her only source of income, and that as a condition of receiving those benefits, she had to make an effort to find work. Accordingly, she looked for work, but due to her health conditions and medications, there were no opportunities available to her. (R. 178–79). Evidence that these efforts were born of Ms. VanAsdall's financial need, and that they were hampered by her conditions, casts them in quite a different light than the ALJ portrayed them, and could have supported a different consideration of this evidence. *See Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (noting that while an ALJ may consider the fact that a claimant sought unemployment benefits, "attributing a lack of credibility to such action is a step that must be taken with significant care and circumspection" after carefully considering all of the surrounding facts); *Schmidt*, 395 F.3d at 746 (noting that a claimant's financial need may impact the extent to which their seeking work as a condition of receiving unemployment benefits affects their credibility); *see Gentle*, 430 F.3d at 867 ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). The ALJ did not acknowledge this contrary evidence, though.

Picking up where the ALJ left off, the Commissioner's brief does not acknowledge any of the above evidence that the ALJ failed to consider. Rather, the Commissioner's argument on this issue, which spans a single sentence, is that Ms. VanAsdall's argument fails because it relies

8

on her own testimony, "the veracity of which is, of course, the matter that is at issue." [DE 21 p. 9]. That misses the point. The ALJ need not have credited the evidence in question, but he needed to consider it before discrediting it. It is possible that, in further considering these issues without mischaracterizing or selectively considering the record, the ALJ will come to the same conclusion and find that Ms. VanAsdall was not fully credible and that the treating physicians' opinions were only due limited weight. Those determinations are for the ALJ to reach, but he must reach them after considering the record as a whole—not just those aspects of it that supported his decision. *Scrogham*, 765 F.3d at 699; *see Czarnecki*, 595 F. App'x at 644 (holding that the ALJ erred by adopting "an impermissible 'sound-bite' approach in evaluating the record").

The Court finds that the ALJ's improper handling of this evidence requires reversal. An ALJ is not required to address every piece of evidence, but he must build a logical bridge from the evidence to his conclusion. *Clifford*, 227 F.3d at 872. Thus, an ALJ's "apparent selection of only facts from the record that supported [his] conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal." *Scrogham*, 765 F.3d at 699. The ALJ relied on such a selective consideration of the facts here, and that error impacted both his analysis of Ms. VanAsdall's credibility and his analysis of what weight to place on her treating physicians' opinions. Granted, Ms. VanAsdall's activities were not the only reason he cited in support of either conclusion. The ALJ also noted, for example, that Ms. VanAsdall had made comments suggesting that the reason she was not seeking work was not her inability to work, but her desire to receive benefits. The ALJ also noted that the treating physicians' opinions were not entirely supported by medical evidence. However, the Court cannot be positive that the ALJ would reach the same conclusions even after accurately considering the above evidence, so it

on her own testimony, "the veracity of which is, of course, the matter that is at issue." [DE 21 p. 9]. That misses the point. The ALJ need not have credited the evidence in question, but he needed to consider it before discrediting it. It is possible that, in further considering these issues without mischaracterizing or selectively considering the record, the ALJ will come to the same conclusion and find that Ms. VanAsdall was not fully credible and that the treating physicians' opinions were only due limited weight. Those determinations are for the ALJ to reach, but he must reach them after considering the record as a whole—not just those aspects of it that supported his decision. *Scrogham*, 765 F.3d at 699; *see Czarnecki*, 595 F. App'x at 644 (holding that the ALJ erred by adopting "an impermissible 'sound-bite' approach in evaluating the record").

The Court finds that the ALJ's improper handling of this evidence requires reversal. An ALJ is not required to address every piece of evidence, but he must build a logical bridge from the evidence to his conclusion. *Clifford*, 227 F.3d at 872. Thus, an ALJ's "apparent selection of only facts from the record that supported [his] conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal." *Scrogham*, 765 F.3d at 699. The ALJ relied on such a selective consideration of the facts here, and that error impacted both his analysis of Ms. VanAsdall's credibility and his analysis of what weight to place on her treating physicians' opinions. Granted, Ms. VanAsdall's activities were not the only reason he cited in support of either conclusion. The ALJ also noted, for example, that Ms. VanAsdall had made comments suggesting that the reason she was not seeking work was not her inability to work, but her desire to receive benefits. The ALJ also noted that the treating physicians' opinions were not entirely supported by medical evidence. However, the Court cannot be positive that the ALJ would reach the same conclusions even after accurately considering the above evidence, so it

on her own testimony, "the veracity of which is, of course, the matter that is at issue." [DE 21 p. 9]. That misses the point. The ALJ need not have credited the evidence in question, but he needed to consider it before discrediting it. It is possible that, in further considering these issues without mischaracterizing or selectively considering the record, the ALJ will come to the same conclusion and find that Ms. VanAsdall was not fully credible and that the treating physicians' opinions were only due limited weight. Those determinations are for the ALJ to reach, but he must reach them after considering the record as a whole—not just those aspects of it that supported his decision. *Scrogham*, 765 F.3d at 699; *see Czarnecki*, 595 F. App'x at 644 (holding that the ALJ erred by adopting "an impermissible 'sound-bite' approach in evaluating the record").

The Court finds that the ALJ's improper handling of this evidence requires reversal. An ALJ is not required to address every piece of evidence, but he must build a logical bridge from the evidence to his conclusion. *Clifford*, 227 F.3d at 872. Thus, an ALJ's "apparent selection of only facts from the record that supported [his] conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal." *Scrogham*, 765 F.3d at 699. The ALJ relied on such a selective consideration of the facts here, and that error impacted both his analysis of Ms. VanAsdall's credibility and his analysis of what weight to place on her treating physicians' opinions. Granted, Ms. VanAsdall's activities were not the only reason he cited in support of either conclusion. The ALJ also noted, for example, that Ms. VanAsdall had made comments suggesting that the reason she was not seeking work was not her inability to work, but her desire to receive benefits. The ALJ also noted that the treating physicians' opinions were not entirely supported by medical evidence. However, the Court cannot be positive that the ALJ would reach the same conclusions even after accurately considering the above evidence, so it

cannot consider this harmless error. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (finding that an ALJ's error was harmless where the court was "convinced that the ALJ will reach the same result" on remand). Conversely, given the presence of contradictory medical opinions in the record and some potential reasons for discrediting Ms. VanAsdall's testimony and the treating physicians' opinions, the Court cannot conclude that Ms. VanAsdall is necessarily entitled to benefits. Thus, the appropriate remedy is to reverse and remand for further proceedings rather than to direct the Commissioner to award benefits.

Having concluded that remand is necessary on that basis, the Court need not resolve Ms. VanAsdall's independent argument that the ALJ did not adequately explain his reasoning behind the weight he gave to her physicians' opinions. On remand, the ALJ will need to undertake this analysis anew, so it is not necessary to resolve whether he adequately explained his analysis in his present decision. However, the Court notes that it would be helpful for purposes of review for the ALJ to more clearly articulate his consideration of the factors set forth in 20 C.F.R. § 404.1527(c) as to the weight to give to the physicians' opinions.

## IV.  CONCLUSION

The decision of the Commissioner denying Ms. VanAsdall's claim for benefits is REVERSED, and this matter is REMANDED to the Commissioner for further proceedings.

SO ORDERED.

ENTERED:  September 8, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court